Good afternoon and may it please the Court, my name is Dan Donovan, I'm from Great Falls, Montana, and I represent the Defendant Appellant Gary Allen Schlake. It is a crime to use the Internet to persuade, induce, entice, or coerce a minor to engage in sexual activity. It is not a crime to use the Internet to ask, to invite, to request, to contact, to discuss, to get a phone number, or to arrange to meet a minor to engage in sexual activity. It is the latter that my client did, and it's our position that the government did not approve the former, did not approve of the crime. What evidence did the government present? Let's suppose, I want to have a simplified hypothetical so I can make sure I understand this argument. 14-year-old girls are having some junior high or high school initiation rite for their sorority, and they approach men on the street, and they say, they're pretty girls, pretty little girls, and they say, I want you to have sex with me, I'm 14, I want you to have sex with me. That doesn't work for consent for statutory rape, correct? Correct, Your Honor. Why would it work to treat the girl as the enticer instead of the man in this Internet enticement for statutory rape? Well, because of, I would say, because of the language of the DINGA case, that Congress made this a strict liability offense. Congress did not use the language, make it a crime to use the Internet with the intent to engage in sexual activity with a minor. They actually inserted the words persuaded, induced, enticed, or coerced. By the way, coerced is not an issue here, we're just dealing with, I think, those three first words. But, again, I realize. Induces is the weakest of those words. What do you have to do to induce? Well, I think that induce and entice, well, starting with persuade, persuade to me, and the way I read the definition, requires convincing someone who's, who may be reluctant to enter, not already decided to do something. Is that it? Or does the statute punish the defendant who acts with the requisite statutory intent, which is to induce, entice, etc.? And why can't a reasonable jury make that before the headset? I can see that the DINGA case does say that you focus on the intent of the defendant and not the predisposition of the so-called victim. I mean, clearly, this e-mail is more than sufficient to permit a reasonable jury to find that that's what he had in mind when he utilized the Internet. Right. So why doesn't that fit squarely with the statutory language that Congress gave? In the specific contents of this case, there's evidence that the 13-year-old girl responded to that very e-mail. I understand it didn't take a lot of inducing. Well, she said, nice dream. Yeah, exactly. But who cares? I mean, I think that's Judge Kleinfeld's question with regard to the incapacity of a minor to expect consent. We don't really care. The fact that she can't exercise appropriate judgment to say no doesn't excuse, does it, what a defendant intends to do when he gets on the Internet trolling? Well, again, my only real answer would be similar, at least, to what's done in state court in Montana, as they define, or the legislature does in Montana, they define consent as, or without consent as saying that someone under the age of 16 cannot consent. And I don't see Congress doing that in this particular case. But I guess you want to, you keep bringing me back to the victim, and I'm still puzzling why, as a matter of interpretation of this whole easily approached, I mean, it sounds like from what you're telling us that this particular victim had Mr. Schlaich simply sent an e-mail saying, I'd like to meet you, probably would have got what he was looking for. But that doesn't seem to be what Congress had in mind. I mean, that e-mail is pretty damaging. And I just, I'm not quite sure the defense that you're trying to raise is valid in light of the language of the statute. Okay. Well, perhaps it doesn't matter, but there is evidence in the record of the victim saying that she didn't feel that she was, you know, Well, it could be, but all I have to, all I can do is really go back to the language of the statute, which prohibits using the Internet. I mean, I think what you're asking as far as, you want a declaration from us in a published opinion that as a matter of law, on this unique set of facts, Mr. Schlaich could not be convicted because of the fact that the victim basically didn't require much to be talked into that. That's pretty much correct. I'm also saying that the prior case, and perhaps this Court today is interpreting on a strict liability type analysis. Well, without accepting your characterization of strict liability, we do have a problem as a panel of this Court. We've got a prior precedent that we have to follow or distinguish. Maybe you can help us. How would we distinguish our decision in U.S. v. DINGRA from the facts of this case? Well, I do think that that's dicta there, and I don't think that issue was squarely addressed or raised. That what I'll call dicta came in in discussing the jury instruction issue. And, in fact, that case was cited during the jury settlement instruction in this case, and Judge Moy really chose not to follow it as far as the jury instructions go here. I don't understand something there. My problem in this case is, even though your point seems to me to be a significant, raise a significant question, it seems to me that DINGRA provides a significant answer. Now, the only way I can distinguish it is it's plain error review instead of direct error review. But on plain error review, DINGRA says that an instruction that told the jury that if it concluded that the lewd and lascivious conduct was the young girl's idea, then it had to find the defendant not guilty. And DINGRA says that's a misstatement of the law. Victim's willingness is irrelevant, just like consent in a stat rape case. I agree with that. That came up with my hypo. Right. So I can see where DINGRA could be established because it's plain error review, but I cannot see that that helps you any in view of what they seem to hold was a misstatement of law. Well, if the focus then is on the communication, the e-mail or whatever from the defendant himself, then really what's the purpose of any evidence beyond that? That's what I'm thinking of. Take my hypo about the 14-year-old girls trying to get into a sorority by seducing older men. Suppose that instead of doing it on the street corner, they do it on the net. And somebody sends an e-mail saying, okay, I'm game. Why under DINGRA wouldn't that be inducement, just the man making his name and availability, bringing it to the girls' awareness? Well, all I can get back to is what I alluded to previously. Congress hasn't made a crime out of the communication itself. You'd have to look at the communication. Why isn't that inducement? Well, the way I read inducement, the person has to, A, perhaps not be ready and able to carry out the act. And number two, there has to be some sort of. That I don't understand. A salesman can induce me to buy a new iPod, even though I came into the store because I was shopping for a new iPod. He induces me to buy a new iPod by showing me the new iPods and how attractive they are. I don't understand where reluctance comes into it, with that weak word. There has to be some, I think, persuasion there, too, as part of inducement. It's just not responding to a request. I want to do this. Okay, here I am. I'll do it. There has to be something on behalf, with this particular crime, on behalf of the defendant, to actually persuade, induce, entice, or coerce, which, again, we don't have coerce here. But there's got to be something more than just communicate. There's got to be something more, at least that's what I'm saying, than just talking about it. What you're saying is mere communication is not inducement. Right. Right. Now. Thank you, counsel. Okay. Is my time up? Yes. Okay. Why don't you pay attention, because we may give you a minute for rebuttal. All right. Thank you. Good afternoon. May it please the Court. My name is Marcia Hurd, and I'm in AUSA in the District of Montana. I tried this case and did the appellate brief. I think that the panel has hit the problem with the defendant's argument square on the head, which is, according to the Dinger case, the victim's actions and the victim's intent are irrelevant. Merely engaging in sexually explicit communication does not constitute a 2422B violation. The defendant must engage in the conversation for the purpose of inducing a minor into sexual activity. That's what the Ninth Circuit has already held in the Dinger case. In this case, Mr. Schlake made it clear from the very beginning what he was interested in. Tell me what the best facts are in the excerpts here to satisfy induce, the element of induce. I think the best facts are in the very second e-mail. The first e-mail basically says, hi, you're a hottie, under ER 41. It's in the second e-mail the next day. Which page is that? It'd be under ER 44. 44. The second e-mail suggests that she sneak out and that they have sex and says, but they'll have to keep it a secret because basically it would be illegal because of her age and that he wanted to hook up without her parents knowing, so he didn't have an angry dad chasing him down with a shotgun. So if you don't take his first e-mail, you're a hottie, are you interested in a single sexy guy in Missoula for some fun time's baby, as being the beginning, certainly the second one is. And then we have the very lengthy e-mail that Judge Tallman has noted that we didn't even read into the record at all because it is basically very lewd and very filthy in its language. There was no doubt about Mr. Schlaich's intent in his statements to law enforcement. He noted that he liked to make himself look younger than his real age and that he was very attracted to girls under the age of 15 because they didn't have prior sexual experiences, and he indicated that's what he was doing. And in this case, it ended up actually being a real girl and it ended up with actual sexual activity on two different occasions over that weekend. So I think that the DINGRA case controls here. It's very clear that the DINGRA panel has said that the victim's actions and the victim's comments are not the appropriate focus. In the DINGRA case, it was a real child case as well, and that girl actually had in her profile some discussion about sexual experiences she'd had. What would happen in my hypo? Tell me if this would be enough. The hypo of the girls who want to get into the sorority, one of the things they have to do is pledge to seduce older men. So they put it on the Internet, and I guess to elaborate the hypo so that the man doesn't even have to send an e-mail, they just say, just show up at such and such an address, such and such a time, and we're ready for you. I think that isn't enough under 2422B. If you look at his intent and his intent in using the Internet, did he use the Internet? So you'd say that hypo, the crime is not committed. That's what I would say, Your Honor. And you wouldn't look at what she proposed, but you look at what he did in his use of the Internet or interstate communications. Did he use the Internet for the purpose of, you know, persuading, inducing, or enticing her into sexual activity? And from the hypothetical, give me... What if in the hypo they said, before you show up, just send an e-mail saying, okay, so that we don't wait around that address for nothing? Still not enough, Your Honor. I think under 2422B there has to be more. There has to be his intent. The focus has to be on his statutory intent in using the facility of interstate communications. One thing I would like to address briefly is the misrepresentation of age argument, because the United States did assert in the sentencing memorandum that the girl had testified at trial that he was 24. In fact, that is inaccurate. That's one of those, it's in the questions to be asked. It was in the statement that the girl gave to law enforcement, never got to the topic at trial, and she did not say that. What the judge rested his ruling on was two different things. In addition to that mistake that we all had, which was that his confession that he had given to FBI Special Agent Mosbach was that he put his age down as 22 rather than 32, making it more appealing to younger girls. Put it down on what? On his profile. But there was that was in the context of the first discussion that we had. And second, he also relied on the fact that Mr. Schlaich sent his college ID to this 13-year-old girl, leading her to the impression that he was your typical college-age person rather than a person who is actually. But he was a college student? Yes. So that's not misleading at all, is it? Not necessarily. I think that was one of the things that the judge looked at as being one fact that could potentially have misled. Although, if you look at the actual guideline itself, it doesn't say it has to have misled the victim. It just said that he misrepresents his identity for the purpose of doing that. And so in this case, the judge looked at those three things, including his own confession, that that's what he was doing and why. Well, as I understood it, the defense doesn't disagree that the profile contains an older age. The best they can do is say it's a typographical error. Exactly. That's what they said in the sentencing memorandum, that he accidentally typed in 22 rather than 32, which was his real age. And so the judge had to consider that plus the fact that he provided that the victim with his Grizzly identification card, which apparently appeared younger, to infer or deduce that he was misrepresenting his age. Exactly. Are there any other questions on any of the issues that have been raised or on the double jeopardy issue?   Thank you very much. Thank you, counsel. Go ahead and take one minute. All right. I'm going to respond quickly to the last issue, the last argument. Page 30 of my opening brief, I quote from the applicable guidelines section, which says as follows, quote, the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct. There is nothing in the record of trial that my client misrepresented his age to this victim. There's no testimony as to that point. But this is a sentencing determination that the court is free to make as a result of the fact finding in connection with sentencing or reliance on the pre-sentence report. Well, my argument really is if there's no direct misleading of the victim, if it's on his web page, which she didn't see, there's no evidence that she saw his web page or that she said she relied on this misrepresentation of his age to respond to him or whatever. Is there a position that in connection with sentencing and relevant conduct that the court cannot look at the profile that he posted on? I think they can look at relevant conduct. But at least the way I read this guideline rule, it says to coerce the victim in this particular case. It's not an enhancement just for that act alone. So you're saying he misrepresented his age to the public, but he didn't misrepresent his age to the victim specifically. Right. The misrepresentation of his age had nothing to do to enticing, encouraging the victim to engage in sex with him is what I'm saying. Thank you very much. Okay. Thank you, counsel. Thank you.
judges: Kleinfeld, Tashima, Tallman